IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| THE ESTATE OF JACQUELINE McCARN INGRUM, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CASE NO. 3:09-CV-255-WKW [WO] ) |
| FINANCIAL FREEDOM ACQUISITION, LLC, *et al.*, | ) ) ) |
| Defendants. | ) ) |

# **MEMORANDUM OPINION AND ORDER**

The Estate of Jacqueline Ingrum ("the Estate") brings this action for declaratory judgment, quiet title, and slander of title against Defendants Pacific Reverse Mortgage, Inc. ("Pacific"), Financial Freedom Acquisition, LLC ("Financial Freedom"), and the United States Department of Housing and Urban Development ("HUD"). (Compl. (Doc. # 1, Attach. 1).) This cause is before the court on Pacific and Financial Freedom's Motion for Summary Judgment (Doc. # 30), HUD's Motion to Dismiss or, in the Alternative, for Summary Judgment[1] (Doc. # 33), and the Estate's Motion for Judgment as a Matter of Law (Doc. # 34). After careful consideration of counsel's briefs, the relevant law, and the record as a whole, the court finds that the Estate's motion is due to be denied and Defendants' motions are due to be granted.

---

[1] HUD adopts Pacific and Financial Freedom's arguments. (*See* Doc. # 33.)

## I. JURISDICTION AND VENUE

Subject matter jurisdiction is exercised pursuant to 28 U.S.C. §§ 1444 and 2410(a). The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations in support of both.

## II. STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (*per curiam*) (quoting Fed. R. Civ. P. 56(c)). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

If the movant meets its evidentiary burden, the burden shifts to the nonmoving party to establish, with evidence beyond the pleadings, that a genuine issue material to each of its claims for relief exists. Fed. R. Civ. P. 56(e)(2); *Celotex Corp.*, 477 U.S. at 324; *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). What is material is determined by

the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (*per curiam*) (internal quotation marks and citation omitted).

A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001). However, if the evidence on which the nonmoving party relies "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). "A mere 'scintilla' of evidence supporting the [nonmovant's] position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party," *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990), and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (*per curiam*). Hence, when a plaintiff fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear

the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex Corp.*, 477 U.S. at 323.

### III.  FACTUAL AND PROCEDURAL BACKGROUND[2]

This case arises out of an October 19, 2007 Order entered by the Probate Court of Lee County, Alabama, purporting to invalidate certain transactions relating to real property located at 2607 Columbus Parkway, Opelika, Alabama (hereinafter "the Property" or "Homeplace").  The relevant facts are undisputed.

The decedent's (Jacqueline Ingrum) will was admitted to probate on April 28, 2004.  The will provides, in relevant part, as follows:

#### ITEM II.

I hereby nominate and appoint, my son, JERRY G. INGRUM, Executor of this my last will and testament.  If he should predecease me or should be unwilling or unable to act in such capacity, I hereby nominate and appoint as Alternate Executor my son, CHARLES M. INGRUM, I exempt said Executor or Alternate Executor from making a filing bond to act in this capacity; I exempt them from making any return, report, inventory, appraisal or settlement of any kind as to their actions as such executor.

. . . .

#### ITEM VI.

To my son, Jerry G. Ingrum, I give, devise and bequeath the real property or the "HomePlace" as described in Exhibit "A" attached to be used for and

---

[2] Defendants move to strike portions of evidence submitted by the Estate in support of its motion for summary judgment (Docs. # 37, 39), as well as evidence submitted by the Estate in support of its opposition to Defendants' motions (Docs. # 45, 47).  The court construes the motions to strike as additional argument, and will deny the motions.  Only evidence that is admissible on its face or can be reduced to admissible form and that complies with Federal Rule of Civil Procedure 56(e) will be considered.  *Celotex Corp*, 477 U.S. at 323-24; *Macuba v. DeBoer*, 193 F.3d 1316, 1322-24 (11th Cir. 1999).

during his lifetime as a place to live. If Jerry Ingrum should sell said Homeplace, it is my desire that the proceeds of the sale be divided as follows:
    A.) Fifty percent (50%) to Jerry G. Ingrum
    B.) Remaining fifty percent (50%) to be divided equally between my two grandchildren, Julie Ingrum Brown and Charles M. Ingrum, Jr.

### ITEM VII.

I hereby give, devise, and bequeath the rest, residue and remainder of my estate whether the same be real property, personal or mixed to my son, JERRY G. INGRUM, in fee simple to dispose of as he deems fit and proper. In the event JERRY G. INGRUM should predecease me or we should die simultaneously or under such circumstances that it is impossible to tell which one of us predeceased the other, then it is to be assumed that JERRY G. INGRUM predeceased me and my estate will be left to my grandchildren, JULIE INGRUM BROWN AND CHARLES M. INGRUM, JR.

(Doc. # 32, Ex. 9, at 12-16.)

Jerry Ingrum, the decedent's son, was named executor of the Estate and granted Letters Testamentary on April 28, 2004. (Doc. # 32, Ex. 9, at 19-21.)

Almost two years later, on March 24, 2006, Jerry Ingrum purported to sell the "Homeplace" (hereinafter, "the Property") to himself by way of an executor's deed for consideration of $10.00. (Doc. # 32, Ex. 4.) The deed was duly recorded in the Probate Office of Lee County. (Doc. # 32, Ex. 4.) In June 2006, Jerry Ingrum took out two mortgages on the property with Pacific and HUD. (Doc. # 32, Exs. 5, 7.) Pacific subsequently assigned its mortgage to Financial Freedom. (Doc. # 32, Ex. 6.) Both mortgages and the assignment were duly recorded. (Doc. # 32, Exs. 5-7.)

In July 2006, Jerry Ingrum presented his nephew, Charles Ingrum Jr., and his niece, Julie Ingrum Brown (through her husband, Anthony Brown), with separate envelopes

containing $2.50, for their "share" of the sale of the property. (Charles Ingrum Jr. Aff. 1 (Doc. # 34, Attach. 1, Ex. H); Anthony Brown Aff. 1 (Doc. # 34, Attach. 1, Ex. I).) Both Charles Ingrum Jr. and Julie Ingrum Brown refused to accept the money. (Charles Ingrum Aff. 1; Anthony Brown Aff. 1.)

Charles Ingrum Jr. and Julie Ingrum Brown filed suit against Jerry Ingrum in the Probate Court of Lee County seeking to void the executor's deed and the mortgages. On October 19, 2007, the Probate Court issued an Order declaring that the executor's deed to Jerry Ingrum was void *ab initio* and that the mortgages did not attach to the property.[3] (Doc. # 32, Ex. 10, at 67-73.) The Probate Court further ordered that the mortgages be released within forty-five days. (Doc. # 32, Ex. 10, at 67-73.) Despite their facial interest in the property and their known identity, neither Financial Freedom nor HUD had notice of, or participated in, the proceedings in the Probate Court. (Finegan[4] Aff. ¶ 2 (Doc. # 32, Ex. 12).) Defendants have, to this date, failed to release the mortgages.

On July 31, 2008, the Probate Court removed Jerry Ingrum as the executor and appointed Anthony Brown. (Doc. # 32, Ex. 11, at 9-10.) In the same order, the court approved a quitclaim deed from Jerry Ingrum to Charles Ingrum Jr. and Julie Ingrum Brown, purportedly granting Charles Ingrum Jr. and Julie Ingrum Brown the property in fee simple, free of all liens and encumbrances. (Doc. # 32, Ex. 11, p. 9-10.)

---

[3] Notably, the Probate Court declared that Jerry Ingrum "may retain the HomePlace as a life estate," but did not clarify who had the remainder interest in the property. (Doc. # 32, Ex. 10.)

[4] Donna Finegan is an assistant vice president and the senior paralegal for Financial Freedom. (Finegan Aff. ¶ 1.)

Charles Ingrum Jr. and Julie Ingrum Brown located a prospective purchaser for the property, John Marsh, in August 2008. (Marsh Aff. 1 (Doc. # 34, Attach. 1, Ex. K).) A price of $180,000 was "unofficially agreed" upon. (Marsh Aff. 1.) However, the sale could not be completed until the subject mortgages were released. (Marsh Aff. 1.) The prospective purchaser, while still interested in purchasing the property, would now only pay $160,000. (Marsh Aff. 1-2.)

The Estate brought suit in the Circuit Court of Lee County, Alabama, on February 20, 2009, asserting the following causes of action: (1) slander of title against Pacific and Financial Freedom (Counts I and II), (2) declaratory judgment against all defendants declaring that the Estate is the owner of the property (Count III), and (3) quiet title against all defendants (Count IV[5]). (Compl. (Doc. # 1, Attach. 1).) HUD removed the case to this court on March 26, 2009, pursuant to 28 U.S.C. §§ 1444 and 2410(a). (Doc. # 1.)

On November 6, 2009, the parties filed their respective motions for summary judgment. (Docs. # 30, 33, 34.)

## IV.  DISCUSSION

### A.  The Probate Court's Order

The crux of this dispute centers on the validity of the Probate Court's October 19, 2007 Order. If, as Defendants contend, the Probate Court either (1) lacked jurisdiction to invalidate the deed and the mortgages, or (2) "'acted in a manner inconsistent with due

---

[5] The Estate mistakenly titles both Count III and Count IV as "Count Three." (Compl. (Doc. # 1, Attach. 1).)

7

process,'" then the order is void in its entirety. *Neal v. Neal*, 856 So. 2d 766, 781 (Ala. 2002) (quoting *Seventh Wonder v. Southbound Records, Inc.*, 364 So. 2d 1173, 1174 (Ala. 1978)). The practical implications of either scenario are the same: Defendants are not bound by the Probate Court's Order construing the will and invalidating the deed and the mortgages. Because the court finds that Defendants' due process rights were violated, it need not address the jurisdictional question.

It is axiomatic that the Fourteenth Amendment Due Process clause prohibits the deprivation of "life, liberty, or property" without notice and the opportunity to be heard. U.S. Const. amend. XIV; *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). The Estate does not dispute that a mortgagee has a property interest protected by procedural due process; nor does the Estate dispute that a mortgagee is entitled to notice and an opportunity to be heard in proceedings affecting those rights. Rather, the Estate appears to contest the validity of the mortgages themselves, arguing that Defendants were not *bona fide* mortgagees and, therefore, were not entitled to notice and an opportunity to be heard before the Probate Court purported to invalidate their interests. (*See* Pl.'s Summ. J. Br. 9-11 (Doc. # 34).)

The Estate cites no case law to support its contention that only property interests obtained by *bona fide* purchasers are entitled to protection under the Due Process clause. The definition of "property interest," as that term is used in the Fourteenth Amendment, is not nearly so narrow. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576 (1972) (noting that property interests "may take many forms," including welfare benefits or a tenured professor's interest in continued employment); *Mathews*, 424 U.S. at 332 (holding

that Social Security disability benefits are a property interest protected by due process). A property interest protected by procedural due process is an interest for which one has a "legitimate claim of entitlement." *Roth*, 408 U.S. at 577. Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings." *Id.*

A mortgagee in Alabama holds title in fee simple subject to a condition subsequent that, if the debt created by the promissory note is paid according to its terms, title will revert to the mortgagor. *See Trauner v. Lowrey*, 369 So. 2d 531, 534 (Ala. 1979). In other words, a mortgagee retains an equity of redemption. *See Bailey Mortgage Co. v. Gobble-Fite Lumber Co.*, 565 So. 2d 138, 143 (Ala. 1990). The Estate does not contend that Defendants did not have a "legitimate claim of entitlement" to the mortgages, just that they were not *bona fide* mortgagees. Financial Freedom's status as a *bona fide* mortgagee, however, is only relevant as a potential defense should a court find that Jerry Ingrum did not have authority to sell or mortgage the property. Defendants had a right to argue the validity of the mortgage at the hearing. *See Roth*, 408 U.S. at 577 (noting that although recipients of welfare benefits "had not yet shown that they were, in fact, within the statutory terms of eligibility," "they had a right to a hearing at which they might attempt to do so").

Because Financial Freedom had a property interest protected under the Due Process Clause, it should have received notice and an opportunity to be heard and protect that interest during the Probate Court proceeding. Thus, the Probate Court "'acted in a manner inconsistent with due process,'" *Neal*, 856 So. 2d at 781 (quoting *Seventh Wonder*, 364 So.

9

2d at 1174), and the October 19, 2007 Order invalidating the deed, the mortgages, and interpreting the will is void. Accordingly, Defendants' motion for summary judgment on the Estate's declaratory judgment claim is due to be granted, and the Estate's motion for summary judgment on the same claim is due to be denied.

**B.     Quiet Title**[6]

It is undisputed that Pacific assigned the mortgage to Financial Freedom on July 5, 2006, and thus has no interest in the property or the mortgage. The main area of contention relates to the validity of Financial Freedom's and HUD's mortgages, which turns on Jerry Ingrum's interest in the property and whether he had the absolute power of disposition when he mortgaged the property.

"The intention of the testator is always the polestar in the construction of wills, and the cardinal rule is to ascertain the intention of the testator and give it effect if not prohibited by law." *Mastin v. First Nat'l Bank of Mobile*, 177 So. 2d 808, 813 (Ala. 1965). To determine the testator's intent, the court must look to the instrument as a whole in "light of attending facts and circumstances." *Id.* If the language within the four corners of the will "is unambiguous and clearly expresses the testator's or testatrix's intent, then that language must govern." *Born v. Clark*, 662 So. 2d 669, 671 (Ala. 1995). "Where a will contains ambiguous or doubtful expressions, it is the duty of the court to determine what the testator or testatrix intended." *Id.* However, absent *latent* ambiguity in the will, parol evidence is

---

[6] The state circuit court is usually tasked with interpreting wills and quieting title; however, because the United States, through HUD, has an interest in the property, this case was properly removed pursuant to 28 U.S.C. §§ 1444 and 2410(a). (Doc. # 1.)

not permissible to show the testator's intent.  *Cook v. Morton*, 47 So. 2d 471, 474-75 (Ala. 1950); *see also Kershaw v. Kershaw*, 848 So. 2d 942, 955 (Ala. 2002) ("This Court often has stated that it will not look beyond the four corners of an instrument unless the instrument contains latent ambiguities.").

> In *Jacoway v. Brittain*, the Alabama Supreme Court held that
>
> [a] latent ambiguity is to be distinguished from a patent ambiguity. A patent ambiguity is not a true ambiguity; it is merely confusion created on the face of the will by the use of defective, obscure or insensible language.  On the other hand, a latent ambiguity occurs where the language is clear and intelligible, but when considered in light of certain extraneous facts, it takes on a multiple meaning.

360 So. 2d 306, 308 (Ala. 1978).

Here, the Estate simply makes the legal conclusion that the will contains latent ambiguity and purports to rely on parol evidence obtained during the Probate Court proceeding to show that the testator, Jacqueline Ingrum, did not intend to give Jerry Ingrum a fee simple absolute in the property.  To the extent the Estate relies on the Probate Court's Order for this conclusion, that reliance is misplaced.  As discussed above, the Probate Court Order is void and unenforceable, and warrants no deference.  Thus, this court must conduct an independent review of the will.

Pursuant to Item VI of the will, Jerry Ingrum received the Property "to be used for and during his lifetime as a place to live."  The phrase "during his lifetime" evinces an intent to create a life estate; however, this section of the will makes no reference to a remainder interest.  *See Barnett v. Estate of Anderson*, 966 So. 2d 915, 919 (Ala. 2007) (noting that a provision of a will without any mention of a remainder interest "may seem lacking in

complete meaning"). The only mention of a remainder interest appears in the residuary clause, which states that "the rest, residue and remainder of [Jacqueline Ingrum's] estate whether the same be real property, personal or mixed to my son, JERRY G. INGRUM, in fee simple to dispose of as he deems fit and proper." Thus, upon Jacqueline Ingrum's death, Jerry Ingrum received the real property "to be used for his lifetime" *and* a remainder interest in that same real property. According to Alabama law, "[w]hen a person holds both the life estate and the remainder interest in property, those interests are said to have merged, and the owner holds the property in fee simple." *Kinard v. Jordan*, 646 So. 2d 1380, 1383 (Ala. 1994).

The Estate makes the blanket assertion that the will is ambiguous, and proceeds to analyze extrinsic evidence to show Jacqueline Ingrum's intent. It does so, however, without pointing to any particular ambiguous provision of the will. The Estate points to no specific term or phrase that, "when considered in light of certain extraneous facts, . . . takes on a multiple meaning," *Jacoway*, 360 So. 2d at 308. Thus, it is unclear what latent ambiguity will be removed by the introduction of this extrinsic evidence.

The provision relating to the sale of the property[7] does not change the end result. This language purports to place a condition on the sale of the property; it could not plausibly be interpreted to grant the grandchildren a remainder interest in the property. There is nothing

---

[7] This provision of the will states: "If Jerry Ingrum should sell said Homeplace, it is my desire that the proceeds of the sale be divided as follows: A.) Fifty percent (50%) to Jerry G. Ingrum; B.) Remaining fifty percent (50%) to be divided equally between my two grandchildren, Julie Ingrum Brown and Charles M. Ingrum, Jr." (Doc. # 31, Ex. 9.)

ambiguous about the phrase, "If Jerry Ingrum should sell said Homeplace, it is my desire that the proceeds of the sale be divided . . . ." (Doc. # 31, Ex. 9.) It is not subject to multiple interpretations. Alabama law is clear that parol evidence is only permitted to clarify the meaning of an ambiguity, not to "vary, contradict or add to the plain and unambiguous language of the will." *Cook*, 47 So. 2d at 474. While extrinsic evidence is "admissible to explain the meaning of ambiguous terms, it is never admissible to show terms the testator intended to use." *Achelis v. Musgrove*, 101 So. 670, 672 (Ala. 1924). In other words, "parol evidence is not admissible to show that the testator meant one thing when [s]he said another." *Cook*, 47 So. 2d at 475 (internal quotation marks omitted). Thus, the Estate cannot introduce extrinsic evidence to show that, although the unambiguous language in the will grants Jerry Ingrum a fee simple absolute, Jacqueline Ingrum *meant* to grant him a life estate, with a remainder interest in the grandchildren. The language relating to the sale of the property does not alter the parties' property interests; it represents nothing more than Jacqueline Ingrum's desire related to the sale of the real property[8] (and poor will drafting).

Accordingly, the court finds that, pursuant to the unambiguous terms of the will: (1) Jerry Ingrum received a fee simple in the property with absolute right of disposition; (2) Jerry Ingrum's interest vested upon the death of Jacqueline Ingrum; (3) the executor's deed was

---

[8] To the extent the Estate contends that Charles Ingrum Jr. and Julie Ingrum Brown have an interest in the proceeds from the mortgages, that contention is meritless. The provision of the will stating Jacqueline Ingrum's "desire" that the proceeds of any sale be divided among Jerry Ingrum and the two grandchildren is not binding on Jerry Ingrum. The phrase "it is my desire" is merely precatory, and does not limit Jerry Ingrum's power of disposition. *See Thomas v. Reynolds*, 174 So. 753, 757 (Ala. 1937) ("The meaning of precatory words is well understood. Words of entreaty[,] request, desire, wish, or recommendation employed in wills are distinguished from direct and imperative terms.").

13

superfluous and irrelevant; and (4) the mortgages on the property are valid. Thus, the Estate's motion for summary judgment on the quiet title claim is due to be denied to the extent the Estate requests that the title be quieted in the Estate's favor.

## C. Slander of Title

To establish a slander of title claim under Alabama law, the plaintiff must prove:

(1) Ownership of the property by plaintiff; (2) falsity of the words published; (3) malice of defendant in publishing the false statements; (4) publication to some person other than the owner; (5) the publication must be in disparagement of plaintiff's property or the title thereof; and (6) that special damages were the proximate result of such publication (setting them out in detail).

*Merchants Nat'l Bank of Mobile v. Steiner*, 404 So. 2d 14, 21 (Ala. 1981). As discussed above, Financial Freedom and HUD have a valid lien on the property and, thus, there is no genuine issue of material fact as to the "falsity of the words published." *Id.* For this reason, Defendants' motion for summary judgment on the Estate's slander of title claim is due to be granted and the Estate's motion for summary judgment on the same claim is due to be denied.

## V. CONCLUSION

Based on the foregoing, it is ORDERED that:

(1) Defendants' motions for summary judgment (Docs. # 30, 33) are GRANTED;

(2) The Estate's motion for summary judgment on its slander of title and declaratory judgment claims (Doc. # 34) is DENIED;

(3)     The Estate's motion for summary judgment on its quiet title claim is GRANTED to the extent it seeks to quiet title to the property and DENIED to the extent it seeks to quiet title in its favor;

(4)     Defendants' Motions to Strike (Docs. # 37, 39, 45, 47) are DENIED; and

(5)     Financial Freedom's and HUD's mortgages are valid and enforceable.

Final Judgment will be entered.

DONE this 27th day of August, 2010.

                                                    /s/ W. Keith Watkins
                                      UNITED STATES DISTRICT JUDGE